IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

ROSS A. MILLER,
    *Pro se* Plaintiff,

v.                                        Case No. 3:18-cv-00603 (DJN)

MEDICREDIT, INC.,
    Defendant.

## MEMORANDUM OPINION

Plaintiff Ross A. Miller ("Miller") brings this action against Defendant Medicredit, Inc.

("Medicredit"), alleging violations of multiple provisions of the Fair Debt Collection Practices

Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA") arising from the collection of a medical debt.

Medicredit moved for summary judgment on all of Miller's claims, arguing that Miller's claims

fail as a matter of law because its voicemails and letters to Miller complied with the FDCPA, and

that it could rely on the address it obtained from the original creditor — the same address that

Plaintiff provided the original creditor. Plaintiff also moved for summary judgment, arguing that

Medicredit's contacts with him violated the FDCPA, especially because it had sent the initial

letter to an address where Miller did not receive mail. Miller has failed to put forth admissible

evidence that raises a genuine issue of material fact that would prevent a reasonable factfinder

from returning a verdict in Medicredit's favor. Consequently, for the reasons set forth below, the

Court hereby GRANTS Medicredit's Motion for Summary Judgment (ECF No. 36) and DENIES

Miller's Motion for Summary Judgment (ECF No. 40). The parties have also filed several

motions related to the summary judgment motions, which will be denied.

## I.    Factual Background[1]

On November 9, 2017, Miller sought medical treatment from Primary Health Group –

Johnston Willis ("PHG"). (Def.'s Mem. at 2.) At that time, Miller completed a Patient

Registration Form and listed his address as 3512 Chapel Drive, Richmond, Virginia, 23224 (the

"Chapel Drive address"). (*Id.*) At that time, Miller did not receive mail at that address. (*Id.*)

PHG submitted the bill and billed Plaintiff $32.81 for his co-insurance obligation. (*Id.*) Miller

did not pay the co-insurance balance, so PHG placed the account with Medicredit for collection.

(*Id.* at 3.) PHG provided the Chapel Drive address to Medicredit as Miller's address. (*Id.*)

On March 26, 2018, Medicredit called Miller and left him a voicemail message.[2] (*Id.*)

On March 27, 2018, Medicredit sent Miller a letter at the Chapel Drive address. (*Id.*) On March

29, 2018, and April 18, 2018, Medicredit again left Miller voicemails. (*Id.* at 4.)

---

[1]      Pursuant to Local Rule 56(B), a brief in support of a motion for summary judgment must
contain a section listing all undisputed material facts. E.D. Va. Loc. R. 56(B). Briefs in
response to a motion for summary judgment must contain a section listing those facts "as to
which it is contended that there exists a genuine issue necessary to be litigated[.]" *Id.* When
ruling on a motion for summary judgment, "the Court may assume that facts identified by the
moving party in its listing of material facts are admitted, unless such a fact is controverted in the
statement of genuine issues filed in opposition to the motion." *Id.* Medicredit's brief contained a
section of undisputed facts. (Def's Sugg. in Supp. of Mot. for Summ. J. ("Medicredit's Mem.")
(ECF No. 37) at 2-15.) Miller responded by contesting some of these facts, although he did not
cite portions of the record to support his dispute of the facts. (Pl.'s Resp. to Def.'s Mot. for
Summ. J. (ECF No. 39) ("Pl.'s Resp.") at 4-8.) Miller, in his Motion for Summary Judgment,
included a statement of facts, although he again failed to support these records with specific
citations to the record. (Pl.'s Mem. in Supp. of Mot. for Summ. J. (ECF No. 41) ("Pl.'s Mem.")
at 2.) Medicredit disputed each fact in its response. (Def.'s Resp. to Pl.'s Mot. for Summ. J.
(ECF No. 47) ("Def.'s Resp.") at 2-4.) Where Plaintiff did not dispute facts listed by Medicredit
or offer support for the facts that he alleges, the Court accepts Medicredit's recitation as
undisputed. In any event, the parties largely agree on the material facts, but dispute the
application of the law to those facts.

[2]      The exact contents of the voicemail do not appear in any portions of the record cited by
either party. Plaintiff alleges the voicemail stated:

> Hello. We are calling from Medicredit on behalf of _____.
> This is a call from a debt collector.

On April 19, 2018, PHG placed another account with Medicredit for collection, this account relating to medical services rendered on December 5, 2017. (*Id.*) On April 25, 2018, Medicredit mailed Miller a letter regarding this account to the Chapel Drive address. (*Id.*) On April 26, 2018, Miller sent a letter to Medicredit disputing the debt and requesting verification. (*Id.*) Upon receipt of the letter, Medicredit ceased calls to Miller's residential telephone, changed Miller's address to the P.O. Box listed on Miller's letter, and sent all correspondence thereafter to Miller's P.O. Box. (*Id.*) On May 7, 2018, in response to the request for validation, Medicredit mailed a letter to Miller containing itemized statements. (*Id.*) That same day, Medicredit put all collection efforts on hold. (*Id.*) On July 16, 2018, Miller sent a second dispute letter to Medicredit. (*Id.*)

On August 6, 2018, PHG placed a third account with Medicredit. (*Id.* at 5.) On August 11, 2018, Medicredit sent Miller a letter purporting to acknowledge a dispute of this third account. (*Id.*)

## II.    PROCEDURAL BACKGROUND

On August 31, 2018, Miller filed his original complaint. (ECF No. 1.) On October 3, 2018, with the Court's leave, Miller filed his Amended Complaint. (ECF Nos. 7, 8.) Miller's Amended Complaint alleges violations of 15 U.S.C. §§ 1692c(b), 1692d, 1692e, 1692f, and 1692g(a).

---

Please return our call at 800.823.2318,
Monday through Friday, during normal business hours. Thank you.

(Am. Compl. (ECF No. 15) at ¶ 10.) In its motion, Medicredit neither concedes nor disputes the contents of the voicemail, but argues that, even as alleged, the voicemail does not violate the FDCPA. (Def.'s Mem. at 12-15.) In his motion, Miller does not cite to the exact contents of the voicemail at issue, but cites to possibly a template message, without any explanation or authentication. (Pl.'s Mem. at 7.)

On October 23, 2018, Medicredit filed an Answer. (ECF No. 16.) On August 26, 2019, Medicredit filed its motion for summary judgment. (ECF No. 36.) On September 10, 2019, Miller responded to Medicredit's motion and, on September 16, 2019, filed his own motion for summary judgment. (ECF Nos. 39-40.) On September 16, 2019, Medicredit filed a reply in support of its motion for summary judgment. (ECF No. 42.) The next day Medicredit also filed a Motion to Strike Miller's Motion for Summary Judgment, arguing that it failed to comply with the Local Rules and Federal Rules of Civil Procedure. (ECF No. 43.) Miller moved to strike that Motion to Strike. (ECF No. 48.) On September 19, 2019, Miller filed a response to Medicredit's reply in support of summary judgment, which Medicredit also moved to strike that same day. (ECF Nos. 44-45.) On September 26, 2019, Medicredit responded to Miller's Motion for Summary Judgment. (ECF No. 47.) Miller also filed discovery motions and requested an extension of discovery, but the Court denied those motions. (ECF Nos. 55, 57-58, 64.)

### III.    STANDARD OF REVIEW

When the parties have filed cross-motions for summary judgement, as here, "the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quotations omitted). Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should occur "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The relevant inquiry in a summary judgment analysis focuses on "whether the evidence presents a sufficient disagreement to require submission to a [factfinder] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-

52 (1986). In reviewing a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party. *Id.* at 255. Moreover, the Court cannot weigh the evidence to enter a judgment, but simply must determine whether a genuine issue for trial exists. *Greater Balt. Ctr. for Pregnancy Concerns v. Mayor of Baltimore*, 721 F.3d 264, 283 (4th Cir. 2013) (quoting *Anderson*, 477 U.S. at 249).

Once the moving party properly submits and supports a motion for summary judgment, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; instead, there must be no genuine issue of material fact. *Anderson*, 477 U.S. at 247-48. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

Indeed, the Court must grant summary judgment if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To defeat an otherwise properly supported motion for summary judgment, the non-moving party "must rely on more than conclusory allegations, 'mere speculation,' the 'building of one inference upon another,' the 'mere existence of a scintilla of evidence,' or the appearance of some 'metaphysical doubt' concerning a material fact." *Lewis v. City of Va. Beach Sheriff's Office*, 409 F. Supp. 2d 696, 704 (E.D. Va. 2006) (citations omitted). A "genuine" issue concerning a "material" fact only arises when the evidence, viewed in the light most favorable to the non-moving party, allows a reasonable factfinder to return a verdict in that party's favor.

*Anderson*, 477 U.S. at 248.

Finally, to deserve consideration on summary judgment, the evidence supporting the facts set forth by the parties must be such that it would be admissible in evidence. *See* Fed. R. Civ. P. 56(c); *see also Mitchell v. Data General Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered such sufficient proof in the form of admissible evidence that could carry the burden of proof in his claim at trial.").

## IV. DISCUSSION

To prevail on a claim under the FDCPA, a plaintiff must prove that "(1) the plaintiff has been the object of collection activity arising from consumer debt; (2) the defendant is a debt collector as defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Ruggia v. Washington Mut.*, 719 F. Supp. 2d 642, 647 (E.D. Va. 2010). Miller's claims arise out of nine total contacts Medicredit directed at Miller—six letters and three voicemails. According to Miller, each gives rise to various claims under the FDCPA. In analyzing these contacts, the Court notes that it must do so from the perspective of the "least sophisticated consumer." *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 136 (4th Cir. 1996). However, this does not require the Court to entertain "bizarre or idiosyncratic interpretations of collection notices," but rather the Court maintains "a quotient of reasonableness and presumes a basic level of understanding and willingness to read with care." *Id.*

### A. The Letters from Medicredit to Miller

First, the Court will analyze Miller's section 1692g claims, because these claims pervade the Amended Complaint and stem from Medicredit's letters sent to the address provided by

6

Miller. Then, before conducting an analysis of whether any of the letters violate the FDCPA, the Court must first determine which letters the FDCPA covers. Finally, the Court will turn to specific letters and the allegations that they violated the FDCPA.

### i. *The Initial Letters Fulfilled Medicredit's Obligations Under 1692g.*

Plaintiff claims throughout his Amended Complaint that Medicredit violated section 1692g by failing to include the proper notifications in its communications with him. (*See, e.g.,* Am. Compl. ¶¶ 55, 57, 69.) Section 1692g requires a debt collector to send written "validation notices" to debtors informing them of their rights to require verification and to dispute a debt. *Russell v. Absolute Collection Servs.*, 763 F.3d 385, 392 (4th Cir. 2014); 15 U.S.C. § 1692g. The validation notice must contain the amount of the debt, the name of the creditor, and a statement that the debt "will be assumed valid by the debt collector" unless the debtor disputes the validity within thirty days. 15 U.S.C. § 1692g(a)(1)-(3). The notice must also inform the debtor that, upon written request within thirty days, the debt collector will provide verification of the debt and the information of the original creditor. 15 U.S.C. § 1692g(a)(4)-(5). The debt collector must send these validation notices within five days after the initial communication with a consumer. 15 U.S.C. § 1692(a).

The initial letters that Medicredit sent on March 27, 2018 and April 25, 2018 contained all of the required section 1692g disclosures. (ECF Nos. 37-6, 37-7.) Both list the amount of the debt ($32.81 and $21.50). Plaintiff claims that the letters do not contain the name of the creditor, but also claims that "[t]he true creditor is PHG Johnston Willis." (Pl.'s Opp. at 6, 7.) But, Medicredit identified PHG Johnston Willis in its letters. Likewise, the statements relating to Miller's dispute rights match nearly word for word the language of section 1692g.

Moreover, the timing of these letters complies with the statute. Medicredit sent the first

letter one day after the initial voicemail. The second letter, for the second account, constituted the first communication regarding that account. Therefore, Medicredit sent both letters within five days of the initial communication.[3]

Miller claims that Medicredit did not satisfy its section 1692g requirements, because he never received these notices. (Pl.'s Opp. at 10.) Miller further claims that Medicredit needed to send him additional validation notices upon learning of his correct address. However, Medicredit mailed these letters to the address that PHG-Johnston Willis provided to Medicredit, and the letters were never returned. (ECF No. 37-15.) Debt collectors may rely on information obtained from the original creditors, especially when they have no reason to question that information. *McLean v. Ray*, 488 Fed. Appx. 677, 683 (4th Cir. 2012). Moreover, the statute requires the debt collector to "send the consumer a written notice. . ." but it does not require the debt collector to verify the consumer received the notice. 15 U.S.C. § 1692g. Miller cites to no particular evidence in the record that would demonstrate that he did not receive the letters. *See Senftle v. Landau*, 390 F. Supp. 2d 463, 474 (D. Md. 2005) (finding no genuine dispute of fact that plaintiff received section 1692g notices because the plaintiff had produced no evidence that he did not receive them); *Mahon v. Credit Bureau, Inc.*, 171 F.3d 1197, 1201 (9th Cir. 1999) (finding no violation of section 1692g when plaintiffs offered no evidence to rebut presumption of delivery). Instead, the evidence shows that Medicredit sent the validation notices to the address *that Plaintiff provided* to PHG-Johnston Willis, and the letters were never returned. Therefore, no genuine material fact exists that Miller received the validation notices. Because no genuine dispute exists as to whether Miller received the validation notices, the Court need not

---

[3]     With respect to the third account, the record does not reflect any communications in connection with the collection of that account and, therefore, nothing to trigger the validation requirements.

address whether Medicredit had an obligation to re-send the notices.

At bottom, Miller seeks to impose liability on Medicredit for sending letters to the address that Miller himself provided. But, the Court will not fault Medicredit for Miller's mistake.

### ii. Not All Letters Sent by Medicredit Fall Under the FDCPA.

Miller alleges FDCPA liability for all of the letters sent by Medicredit. Medicredit sent three types of letters to Miller: (1) initial letters for each of two accounts (March 27, 2018 and April 25, 2018) (ECF Nos. 37-6, 37-7); (2) itemized statement letters (May 7, 2018 and June 29, 2018) (ECF No. 37-11); and (3) dispute acknowledgement letters (August 1, 2018 and August 11, 2018) (ECF No. 37-11, 37-14.). Medicredit argues that the letters after the initial letters do not constitute communications subject to the FDCPA. (Def.'s Mem. at 16.) Miller alleges that all of the letters sent by Medicredit violate the FDCPA, specifically sections 1692d, 1692e, and 1692f. Those provisions prohibit a variety of activities, but they only apply to communications or contacts that attempt to collect a debt. Indeed, the Court has stated "it is well-established that not every communication between a debt collector and a consumer is subject to the FDCPA and that the FDCPA applies only to communications that are intended to collect a payment." *Penn v. Cumberland*, 883 F. Supp. 2d 581, 587 (E.D. Va. 2012). Indeed, the provisions that Miller claims that Medicredit violated explicitly prohibit conduct *in connection with the collection of a debt*. *See* 15 U.S.C. § 1692d (prohibiting harassment, oppression, or abuse "in connection with the collection of a debt"); 15 U.S.C. § 1692e (prohibiting false, deceptive, or misleading representations "in connection with the collection of any debt"); 15 U.S.C. § 1692f (prohibiting use of unfair or unconscionable means "to collect or attempt to collect any debt").

The Court has adopted a three-part test to determine if a debt collector sent a

communication in connection with the collection of a debt: "(1) the nature of the parties' relationship,[4] (2) the purpose and context of the communication, and (3) whether an 'animating purpose' of the communication is to induce payment." *Kelly v. Nationstar Mortgage, LLC*, 2013 WL 5874704, at *3 (E.D. Va. Oct. 31, 2013). The Court will examine each category of letter against this framework.

The initial letters sent on March 27, 2018 and April 25, 2018 clearly constitute attempts to collect debts. Medicredit does not contest that these constitute attempts to collect a debt. Nor could they, as the letters themselves state that each "is an attempt to collect a debt" and contain instructions for making payments, payment coupons, and requests for payment. (ECF Nos. 37-6, 37-7.) These also show the "animating purpose" of the communication — to induce payment.

The itemized statement letters, however, lack these same characteristics. Read objectively in their context, the letters came at Miller's request and serve to inform Miller of the hospital's charges for the services rendered. (ECF No. 37-11.) In determining the "animating purpose," the letters lack many of the hallmarks of communications that induce payment. The letters do not include demands for payment, payment coupons, mentions of Miller's default, attempts to collect late fees or missed payments, or threats of enforcement proceedings. *See Kelly*, 2013 WL 5874704 at *3-4 (letter lacking those elements did not have "animating purpose" of inducing payment). Taking these three factors together, the Court finds that the itemized statement letters do not constitute communications in connection with the collection of a debt.

Similarly, the dispute acknowledgement letters do not constitute attempts to collect a debt. Reviewing the letters for their context, Medicredit sent the letters in response to Miller's

---

[4]     Because the nature of the relationship between the parties is that of debtor and debt-collector, this factor favors a finding that Medicredit sent the letters in connection with the collection of a debt across all three types of letters.

10

dispute and to inform him of the receipt of his dispute. These letters also lack the elements of communications intended to induce payment. They do not include demands for payment, payment coupons, attempts to collect late fees or missed payments, or threats of enforcement proceedings. In fact, the August 11 letter informs Miller, "[t]here is no additional information or action needed from you at this time." (ECF No. 37-11.) The August 1 letter requests additional information to assist in the investigation. (*Id.*) Moreover, Medicredit ceased all collection efforts on May 7, 2018. (ECF No. 37-15.) While not dispositive, this speaks to Medicredit's animating purpose in sending the letters. Accordingly, these letters do not constitute attempts to collect and cannot give rise to the FDCPA violations alleged by Miller.

As described above, only the two initial letters sent by Medicredit qualify as communications in connection with the collection of a debt. Therefore, the Court will examine whether these letters violate the provisions cited by Miller.

### iii.    *The Letters Did Not Violate Section 1692e.*

Miller claims that Medicredit violated section 1692e. (Am. Compl. ¶ 52.) That section prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt," and enumerates a non-exhaustive list of sixteen types of conduct that would violate the statute. Although difficult to discern precisely the nature of the alleged violations, Miller seems to argue that Medicredit violated sections 1692e and 1692e(10) by not including the name of the creditor. (Pl.'s Opp. at 5-6.) But, as described above, Medicredit included the name of the creditor in the letters.

Likewise, Miller claims that the failure to provide validation notices — the basis for his section 1692g allegations — also violated section 1692e. (Pl.'s Opp. at 4-5.) Again, as described above, Medicredit sent Miller the statutorily prescribed instructions for disputing his

debt, and its conduct cannot give rise to liability under section 1692e.

Miller also alleges violations of section 1692e(11), which requires that a debt collector disclose in the initial communication that the communication comes from a debt collector, and a "mini-*Miranda*" warning, apprising the consumer that any information obtained will be used for the purpose of debt collection. 15 U.S.C. § 1692e(11). Additionally, in all subsequent communications, the debt collector must disclose "that the communication is from a debt collector." *Id.* However, as described above, the initial written communications – the March 27 and April 25 letters – included the proper "mini-*Miranda*" warnings. The other four letters at issue all included the sentence, "[t]his is a communication from a debt collector." Therefore, the letters did not violate section 1692e(11).

### iv.    *The Letters Did Not Violate Section 1692f.*

Miller also includes various references to section 1692f. That section prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt," with a non-exhaustive list of eight prohibited actions. 15 U.S.C. § 1692f. Miller does not identify any violations covered by the enumerated actions. Instead, he seems to base his section 1692f violations on the same facts as his alleged sections 1692e and 1692g violations. (*See, e.g.,* Pl.'s Opp. at 5-7.) Again, as discussed above, Medicredit identified the creditor and did not fail to send the validation notices.

Further, Plaintiff suggests that the manner in which Medicredit folded the envelopes would confuse the least sophisticated debtor as to Medicredit's address. (Pl.'s Opp. at 8.) However, he has presented no evidence as to the manner in which Medicredit folded the envelopes. Instead, the evidence shows Medicredit's address in bold at the top of the letters. Given the prominent display of the address, even the least sophisticated consumer cannot claim

confusion as to Medicredit's address.

Accordingly, Medicredit's Motion for Summary Judgment with respect to the letters will be granted, and Miller's Motion for Summary Judgment with respect to the letters will be denied.

**B. The Voicemails Left by Medicredit.**

Medicredit left three voicemail messages for Miller. The Court must first determine whether these voicemails constitute "communications" under the FDCPA. Then, the Court will determine whether the voicemails violate the FDCPA.

### i. The Voicemails Do Not Constitute Communications.

Plaintiff alleges that the voicemails left by Medicredit violated sections 1692c(b), 1692d, 1692e. As a threshold matter, Medicredit responds that the voicemails do not constitute communications under the FDCPA. (Def.'s Mem. at 15-16.) The Court agrees with Medicredit.

The FDCPA defines a "communication" to mean "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). "As in all statutory construction cases, we assume that the ordinary meaning of the statutory language accurately expresses the legislative purpose." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 376 (2013).

Under a plain reading of the statute, a communication must meet two requirements: it must (1) convey information (2) regarding a debt. The definition itself provides for a broad interpretation of the first prong — the manner in which the communication conveys information. It may convey information either directly or indirectly, and it encompasses "any medium." Yet even the broadest interpretation requires that the communication contain information regarding a debt. For this reason, in determining whether the FDCPA applies to certain messages, "we must examine the content of the messages before determining whether they are communications under

13

the act." *Evankavitch v. Green Tree Servicing, LLC*, 979 F. Supp. 2d 535, 541 (M.D. Pa. 2013). If such an examination does not reveal that the message conveyed information about a debt, then the message does not constitute a communication under the FDCPA. *Id.* ("The message conveyed no information whatsoever about the debt . . . [and] were not communications under the FDCPA.); *Zortman v. J.C. Christensen & Assocs.*, 870 F. Supp. 2d 694, 705 (D. Minn. 2012) (not a communication to a third party where message did not identify a debt); *Koby v. ARS Nat'l Servs.*, 2010 WL 1438763 (S.D. Cal. Mar. 29, 2010) (distinguishing between messages that referenced certain debts or files, which constitute communications, and messages that do not, which do not constitute communications).

Here, an examination of the messages reveals no information regarding a debt. Miller alleges he received the following message:

> Hello. We are calling from Medicredit on behalf of _____.
> This is a call from a debt collector.
> Please return our call at 800.823.2318,
> Monday through Friday, during normal business hours. Thank you.

(Am. Compl. ¶ 10.) This message does not mention a specific debt. It does not mention an amount owed or any information regarding a particular debt. As one court noted in making a similar finding, "[n]o amount of liberal construction can broaden the statutory language to encompass the words recorded in these voicemails." *Biggs v. Credit Collection, Inc.*, 2007 WL 4034997 (W.D. Ok. Nov. 15, 2007).

The Court notes that other courts have reached the opposite conclusion in analyzing whether voicemails constitute communications under the FDCPA. *See, e.g., Hart v. Credit Control, LLC*, 871 F.3d 1255 (11th Cir. 2017) (construing the statute broadly to include voicemails); *Chatman v. GC Servs, LP*, 57 F. Supp. 3d 560, 568 (D.S.C. 2014) (construing "the FDCPA's definition of 'communication' to encompass a voicemail message left for the

consumer-debtor, even if nothing in those messages refers to a debt"); *Foti v. NCO Fin. Sys., Inc.*, 424 F. Supp. 2d 643, 657-58 (S.D.N.Y. 2006) ("Given the choice of language by Congress, the FDCPA should be interpreted to cover communications that convey, directly or indirectly, any information relating to a debt, and not just when the debt collector discloses specific information about the particular debt being collected."). However, the Court does not find a basis for this interpretation in the statute. This interpretation ignores the content requirement of a communication explicit in the definition. Reading out the content requirement would result in the following definition of a communication: "the conveying of information directly or indirectly to any person through any medium." But Congress chose to include the phrase "regarding a debt," and this Court will give effect to Congress' choice to include the content requirement. *See Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 354 (2013) ("We must give effect to Congress' choice."); *United States v. Menasche*, 348 U.S. 528 (1955) ("It is our duty to give effect, if possible, to every clause and word of a statute, rather than to emasculate an entire section."). Words matter — both the words of Congress and the words of the debt collector. Therefore, this Court finds that in determining whether voicemails fall under the FDCPA, the words in the messages matter, and they must include some reference to a debt to qualify as the type of words Congress sought to regulate. Here, they do not. Accordingly, the voicemails do not violate section 1692e(11).

### ii. *The Voicemails Do Not Violate Section 1692c(b).*

Plaintiff claims that the voicemails also violate section 1692c(b). (Am. Compl. ¶ 48.) That section prohibits a debt collector from communicating with third parties, with limited exceptions, in connection with the collection of any debt. 15 U.S.C. § 1692c(b). Because the statute limits communications with third parties, a plaintiff must show that the debt collector

communicated with a third party to impose liability under section 1692c. The mere possibility

that a third party *might* hear a voicemail will not suffice. *See Cozmyk v. Prompt Recovery Servs.*,

851 F. Supp. 2d 991, 994 (S.D.W.Va. 2012) ("Similarly, a message on an answering machine is

not received by or disclosed to a third party unless the third party hears the message.").

Here, Miller's claims fail for lack of a third-party listener, regardless of whether or not

the voicemails constitute communications subject to the FDCPA. Indeed, Miller admitted in his

deposition that he could not identify any other person that heard the voicemails.[5] (ECF No. 37-

16 at 17-18.) Miller has presented no evidence that any other individual heard the voicemails;

therefore, the Court will grant summary judgment on his section 1692c(b) claims.

### iii. Miller's Section 1692d Claims Fail as a Matter of Law.

Miller further claims that Medicredit violated section 1692d(6) by failing to disclose the

caller's name in its voicemails. Section 1692d prohibits conduct "the natural consequence of

which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15

U.S.C. § 1692d. This includes "the placement of telephone calls without meaningful disclosure

of the caller's identity." 15 U.S.C. § 1692d(6).

The Fourth Circuit has not spoken on whether a "meaningful disclosure" includes the

employee's name or merely the name of the debt collector. The Third and Eleventh Circuit have

concluded that section 1692d(6) does not require disclosure of the employee's name. *Hart v.*

*Credit Control, LLC*, 871 F.3d 1255, 1260 (11th Cir. 2017); *Levins v. Healthcare Recovery Grp.*,

902 F.3d 274 (3d Cir. 2018). In *Hart*, the court concluded that a "meaningful disclosure"

required the debt collector's voicemail to provide two types of information: "first, the name of

---

[5]     Additionally, Plaintiff may have conceded he has no claim under section 1692c(b). (Pl.'s
Opp. at 11.) Even if he has not, summary judgment is appropriate.

the debt collection company, and second, the nature of the debt collection company's business, which can be satisfied by disclosing that the call is on behalf of a debt collection company." 871 F.3d at 1260 (quotations omitted). The Court agrees.

The name of the employee calling the consumer does not disclose anything meaningful to the consumer. The employee simply places the call on behalf of the debt collector, rather than on behalf of herself. Indeed, some courts even permit the employee to use an alias so long as she discloses the name of the debt collector. *See Doris v. Accounts Receivable Mgmt., Inc.*, 2013 WL 1209629, at *7 (D Md. Mar. 22, 2013) ("Moreover, the use of an alias is permitted because a debt collector is only required to disclose the agency name."); *Beeders v. Gulf Coast Collection Bureau*, 796 F. Supp. 2d 1335, 1339 (M.D. Fla. 2011) ("FDCPA Section 1692d(6) does not prohibit a debt collection agency employee from using an alias during a telephone call, as long as the employee accurately discloses the name of the debt collection agency and explains the nature of its business."). The debt collector stands to gain from the debtor paying his debts (not the employee), and the collector bears the responsibility for a call that violates the FDCPA. Moreover, ignorance of the employee's name does not prevent the consumer from understanding the nature of the call or disputing the debt. Nor does it turn the call into one that could "harass, oppress, or abuse" the consumer. *See Hart*, 871 F.3d at 1260 (disclosing name of debt collection company and nature of its business "are enough to prevent the debt collector from 'harassing, oppressing, or abusing' the consumer").

Here, the voicemail disclosed that it came from Medicredit, and that it came from a debt collector. The contents of the message allowed Miller to understand the debt collection agency calling him and the nature of its business. Accordingly, Medicredit's voicemails did not violate section 1692d, and the Court will grant Medicredit's Motion for Summary Judgment with respect

17

to Miller's claims under section 1692d.

Because no dispute of material facts exist, and Miller has not produced admissible evidence showing he can prove essential elements of his case, Medicredit is entitled to judgment as a matter of law on all counts. Therefore, the Court will grant Medicredit's Motion for Summary Judgment and deny Miller's Motion for Summary Judgment.

## C.     Requests for Sanctions

In moving for summary judgment, Medicredit requests attorneys' fees under section 1692k, arguing in several places that Plaintiff "knew, or should have known, that this alleged violation . . . was baseless as a matter of law when he filed his Complaint." (Def.'s Mem. at 12, 14, 20.) Section 1692k(a)(3) provides that "[o]n a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs." Bad faith "is not simply bad judgment or negligence, but rather implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; . . . it contemplates a state of mind affirmatively operating with furtive design or ill will." *In re 1997 Grand Jury*, 215 F.3d 430, 436 (4th Cir. 2000).

Although the Court finds Miller's claims legally deficient, it does not find that he brought them with furtive design or ill will. Miller had a colorable basis to make several of his claims, even if they ultimately did not survive summary judgment.

## D.     Other Pending Motions

Several other motions remain pending before the Court, including several motions to strike. Courts in the Fourth Circuit view motions to strike with disfavor "because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a

dilatory tactic." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001).

First, Medicredit moved to strike Miller's Motion for Summary Judgment for failure to comply with the Local Rules and Federal Rules. (ECF No. 43.) Although Miller's noncompliance with the rules could give the Court sufficient grounds to deny his motion, the Court will not take such a drastic step. Moreover, Miller's motion does not show that he can obtain judgment as a matter of law. Therefore, rather than striking the motion, the Court will deny it. Accordingly, Medicredit's Motion to Strike Plaintiff's Motion for Summary Judgment is denied.

Second, Medicredit moved to strike Miller's Reply to Response to Motion for Summary Judgment. (ECF No. 45.) The Local Rules do not permit a surreply "without first obtaining leave of Court." E.D. Va. Loc. Civ. R. 7(F). Miller did not obtain leave of Court before filing his surreply; therefore, the Court did not consider Miller's surreply brief. Consequently, Medicredit's motion is denied as moot.

Third, Miller filed his own Motion to Strike Medicredit's Motion to Strike Reply to Response to Motion for Summary Judgment. (ECF No. 48.) Plaintiff argues that Defendant's Motion to Strike failed to include a *Roseboro* Notice. (ECF No. 48 at 2.) However, the Local Rules only require a *Roseboro* Notice for dispositive or partially dispositive motions, which would not apply to Medicredit's motion. E.D. Va. Loc. Civ. R. 7(K). Plaintiff's Motion has no basis, and the Court will deny it.

Finally, Medicredit filed a motion to strike Miller's Reply to Response to Motion to Compel Discovery. (ECF No. 63.) On November 15, 2019, the Court denied Miller's Motion to Compel Discovery (ECF No. 63), rendering Medicredit's Motion now moot. Therefore, it also will be denied.

## IV.    CONCLUSION

For the reasons stated above, the Court hereby GRANTS Medicredit's Motion for Summary Judgment (ECF No. 36) and DENIES Miller's Motion for Summary Judgment (ECF No. 40).  Further, the Court hereby DENIES Medicredit's Motions to Strike (ECF Nos. 43, 45, 63) and hereby DENIES Miller's Motion to Strike (ECF No. 48).

An appropriate Order shall issue.

Let the Clerk file a copy of this Memorandum Opinion electronically, notify all counsel of record, and send a copy of this Memorandum Opinion to *pro se* Plaintiff at his address of record.  The Clerk shall certify on the docket when this Memorandum Opinion has been mailed.

.

_____ /s/ _____
David J. Novak
United States District Judge

Richmond, Virginia
Dated:  December 9, 2019

20